**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **MAURICE STEVENS** and **KRYSTYNA HARE**, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> **AMERICAN EAGLE OUTFITTERS, INC.** and **AE RETAIL WEST, LLC** and **AE CORPORATE SERVICES CO.,** <br><br> Defendants. | Case No. 21-cv-01062 <br><br> Honorable Charles P. Kocoras <br><br> Magistrate Judge Maria Valdez |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL
ARBITRATION AND DISMISS COMPLAINT AS TO PLAINTIFF MAURICE STEVENS**

**I.      INTRODUCTION**

In the Complaint, Plaintiff Maurice Stevens ("Stevens"), individually and on behalf of a putative class, asserts claims for violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq*., against Defendants. (*See* Complaint, Dkt. 1-1, ¶ 5.) Stevens' BIPA claims arise out of the fact that he worked for defendant American Eagle Outfitters, Inc. ("AEO") and, allegedly, he was required to scan his fingerprints as an authentication method in the course of his employment. (*Id.*, ¶¶ 27-33.)

Stevens signed a voluntary and mutual Dispute Resolution Program agreement as part of his employment with AEO, which requires that Stevens resolve all employment-related and statutory claims not through court proceedings, but rather through either mediation, provided both parties mutually agree to participate, or binding arbitration. Stevens' claims in this litigation fall squarely within the scope of the dispute resolution agreement. Yet, Stevens refuses to abide by the plain terms of the agreement, as made evident by his filing of the Class Action Complaint

("Complaint") [Dkt. 1-1] against defendants AEO, AE Retail West, Inc., and AE Corporate Services Co. (collectively, "Defendants") in Court. Because Defendants do not consent to mediation, the proper forum for Stevens' claims is before an arbitrator. What is more, Stevens' attempt to pursue his claims on a class basis are invalid, as the agreement contains a "Class Action Waiver" provision.

The Federal Arbitration Act ("FAA") expressly governs the agreement and mandates that this Court enforce it. *See* 9 U.S.C. §§ 1 *et seq.*; *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018) (reaffirming a long line of precedent requiring arbitration agreements to be enforced as written, including agreements for individual arbitration).[1] Defendants therefore request that the Court enter an order compelling Stevens to individual arbitration and dismissing the Complaint as to Stevens or, in the alternative, staying this action pending completion of arbitration of Stevens' claims.

## II.    BACKGROUND FACTS

### A.    Stevens Executed a Valid Agreement Requiring Him to Resolve Any and All Employment-Related Claims Through Individual Arbitration.

Stevens was employed by AEO from approximately November 2019 to December 2020 at its location in the Fox Valley Mall in Aurora, Illinois. (Declaration of Jennifer Miele ("J.M. Decl."), Dkt. 1-1, ¶ 8.)

As part of Stevens' onboarding process with AEO, AEO presented Stevens with the Dispute Resolution Program ("DRP") (*See* Declaration of Jennifer Miele (hereinafter, "Miele Decl."), attached hereto as **Exhibit 1**, ¶ 5 and Ex. A.) Stevens was also provided with a corresponding Acknowledgement and Agreement of the DRP ("DRP Acknowledgement"), which

---

[1] As an additional basis, and to the extent necessary, Defendants also move to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for the reasons stated herein.

he executed electronically on October 28, 2019. (*Id.* at ¶ 6 and Ex. B.) The DRP and the DRP Acknowledgement are hereinafter collectively referred to as the "DRP Agreement."

The DRP Agreement "provides a way…to resolve certain different through mediation or binding arbitration rather than through court proceedings." (*Id.* at Ex. A, p. 102.) The DRP Agreement "requires all such [covered] claims to be resolved by an arbitrator through final and binding arbitration (unless the parties are able to work out a resolution among themselves or through the mediation procedure…) and not by way of court or jury trial." (*Id.*) "In order for mediation to occur…both [Stevens] and AEO must mutually agree to participate in it." (*Id.* at Ex. A, p. 104.) The claims covered by the program include "any dispute arising out of or related to [Stevens'] employment with AEO," including, but not limited to, "[a]ll disputes relating to the employment relationship and obligations we may owe one another" and "[c]laims for violation of any federal, statute or other governmental law, common law, constitution, statute, regulation, or ordinance." (*Id.* at Ex. A, pp. 102-03.)

The DRP Agreement also includes an express class action waiver, requiring that arbitration proceed on an individual basis: "There will be no right or authority for any dispute to be brought, heard, or arbitrated as a class and/or collective action [ ], nor shall the Arbitrator have any authority to hear or arbitrate any such dispute." (*Id.* at Ex. A, p. 104.)

By signing the DRP Acknowledgement, Stevens acknowledged: "I acknowledge and agree that I have received and carefully read this dispute resolution program and that I understand and agree to its terms." (*Id.* at Ex. B.) Further, "I agree to this program and agree that I and AEO will arbitrate claims covered by this program." (*Id.*) Importantly, the DRP Agreement specifically "survive[s] the termination of [Stevens'] employment." (*Id.* at Ex. A, p. 108.)

The DRP Agreement, including the requirement that disputes be resolved by arbitration

should both parties not agree to mediate, is mutually binding on Defendants[2] and Plaintiff: "AEO and [Stevens] mutually agree to resolve by final and binding arbitration all claims or controversies, past, present or future arising out of or related to your…employment…. This Program requires all such claims to be resolved by an arbitrator through final and binding arbitration…and not by way of court or a jury trial." (*Id.* at Ex. A, p. 102.)

The DRP Agreement is governed by the Federal Arbitration Act ("FAA"), as it expressly states: "This Program is governed by Federal Arbitration Act, 9. U.S.C. § 1 et seq. (*Id.*) Further, the DRP Agreement clearly evidences a transaction involving interstate commerce. (*Id.*; *see also* Miele Decl., ¶ 3.)

> ### B. Stevens Violated the DRP Agreement by Filing this Class Action Lawsuit and Refusing to Stipulate to Arbitration.

Despite Stevens' binding agreement to resolve his employment-related and statutory claims through the procedure laid out in the DRP Agreement, he filed this lawsuit alleging statutory violations of BIPA arising solely from his employment. (Compl., Dkt. 1-1, ¶¶ 5, 27-33.) The DRP Agreement provides specific exclusions, none of which apply here. By filing the instant lawsuit, as well as his refusal of Defendants' request to arbitrate his claims, Stevens has refused to abide by the DRP Agreement's terms.

## III. ARGUMENT

> ### A. The Court Should Compel Stevens to Resolve His Claims Through Arbitration as Required by the DRP Agreement.

This Court should compel Stevens to resolve his claims through arbitration as set forth in the binding DRP Agreement because the agreement is valid and enforceable under the Federal

---

[2] "AEO" is defined in the DRP Agreement to include the other two defendants in this matter, AE Retail West, LLC and AE Corporate Services Co. (*Id.* at Ex. A, p. 102.)

Arbitration Act, the Illinois Uniform Arbitration Act, and Illinois common law, and Stevens' claims fall within its broad scope.

### 1. Federal Law Heavily Favors the Enforcement of Arbitration Agreements.

The FAA establishes a "liberal federal policy favoring arbitration agreements." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Section 2 of the FAA provides, in relevant part:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such contract . . . shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for revocation of any contract.

9 U.S.C. § 2. The FAA was enacted to overcome judicial resistance to arbitration and, accordingly, "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). In fact, "[t]he 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (quoting *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 499 U.S. 468, 469 (1989)); *see also Kindred Nursing Ctrs. L.P. v. Clark*, 137 S. Ct. 1421, 1428 (2017) (The FAA's "key provision . . . states that an arbitration agreement must ordinarily be treated as 'valid, irrevocable, and enforceable.'") (quoting 9 U.S.C. § 2).

To serve this purpose, state statutes and court decisions cannot hold arbitration agreements to any different or higher standard than those applicable to other contracts. *Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 108 (Ill. 2006). In fact, the "'savings clause' in [9 U.S.C. § 2] indicates [that] the purpose of Congress in 1925 was to make arbitration agreements as enforceable as other contracts." *Id.* (internal citations omitted). Indeed, "Congress' clear intent, in the Arbitration Act,

[was] to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). Importantly, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id*. at 24-25.

> **2.** **The DRP Agreement Is Enforceable under the Federal Arbitration Act and the Illinois Uniform Arbitration Act.**

The FAA governs the enforceability of arbitration agreements in contracts involving interstate commerce. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270-72 (1995); 9 U.S.C. § 2. The FAA applies here because the DRP Agreement is an employment agreement requiring mandatory dispute resolution including arbitration, it expressly provides that it is to be governed by the FAA, and it evidences a transaction involving interstate commerce. *See*, *e.g.*, *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) ("employment contracts, except for those covering workers engaged in transportation, are covered by the FAA"); *Gilmer v. Interstate Johnson Lane Corp.*, 500 U.S. 20, 35 (1991) (holding that employment claims may be subject to mandatory arbitration agreements). Indeed, arbitration has become an accepted and favored method of resolving employment disputes. *See Oblix, Inc. v. Winiecki*, 374 F.3d 488, 491 (7th Cir. 2004) ("Employees fare well in arbitration with their employers – better by some standards than employees who litigate. . .").

Even if the FAA did not govern the DRP Agreement, arbitration of Plaintiff's claims would be appropriate under the Illinois Uniform Arbitration Act. The Illinois Uniform Arbitration Act was enacted to follow federal policy by "plac[ing] arbitration agreements upon the same footing as other contracts and to override the judiciary's longstanding refusal to enforce agreements to arbitrate." *Bd. of Managers of the Courtyards v. IKO Chicago, Inc.*, 697 N.E.2d 727, 732 (Ill. 1998). The Illinois Uniform Arbitration Act states that "[a] provision in a written contract to submit

to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract . . . ." 710 ILCS 5/1. Whether the parties have agreed to arbitrate is determined pursuant to state-law contract principles. *Melena*, 847 N.E.2d at 107. As detailed below, the DRP Agreement meets all requirements for a valid and enforceable contract under Illinois law and Stevens has agreed to resolve employment-related disputes individually through arbitration. Thus, this Court should compel Stevens to arbitration.

### 3. The DRP Agreement Is Valid and Enforceable Under Illinois Law.

The DRP Agreement is a valid and enforceable agreement requiring Stevens to resolve his claims individually through arbitration.[3] Under Illinois law, a valid and enforceable arbitration agreement must satisfy the "basic ingredients" of "an offer, an acceptance, and consideration." *Melena*, 847 N.E.2d at 109. These three fundamental requirements further apply to all contracts. *Id*. Thus, the enforceability of the DRP Agreement in its entirety—including the provisions in which Stevens agreed to arbitrate on an individual basis—is subject to the same test. *Id*. In *Melena*, the Illinois Supreme Court found that all of the ingredients necessary for a contract existed where employees of the defendant were mailed materials relating to the dispute resolution program, which constituted an offer, and the plaintiff continued her employment after receiving notice of the program, which provided both her acceptance and the necessary consideration. *Id*.

Here, an even more explicit offer and acceptance occurred. Stevens was presented with the

---

[3] Defendants expressly reserve their argument that the only appropriate party to such arbitration is Stevens. Stevens signed the binding and enforceable DRP Agreement which waived his right to aggregate his claims with any other employees or bring class action claims. However, Defendants are aware that such a procedural issue is for the arbitrator to decide if this dispute is not resolved through internal or external mediation. *See, e.g., Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 451 (2003); *Employers Ins. Co. of Wausau v. Century Indem. Co.*, 443 F.3d 573, 581 (7th Cir. 2006).

DRP Agreement and given the opportunity to review its terms. (Miele Decl., ¶ 5.) Stevens signed the DRP on October 28, 2019. (*Id.* at ¶ 6 and Ex. B.) Stevens' electronic signature evidences clear acceptance of all terms contained therein. *See Janiga v. Questar Capital Corp.*, 615 F.3d 735, 743 (7th Cir. 2010) (reversing denial of motion to compel arbitration because plaintiff voluntarily signed a contract with an express arbitration provision, regardless of his later assertions that he did not read the contract or did not understand what he agreed to do); *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1292 (7th Cir. 1989) ("[I]t is no defense to say, 'I did not read what I was signing.'"); *Medina v. Hispanic Broad. Corp.*, No. 01 C 2278, 2002 WL 389628, at *2 (N.D. Ill. Mar. 12, 2002) ("It is a basic principle of contract law that an individual's failure to read a document before signing it does not render the document invalid.").

Further, sufficient consideration exists here. Under Illinois law, it is well-established that "continued employment is sufficient consideration for the enforcement of employment agreements." *Melena*, 847 N.E.2d at 109. After signing the DRP on October 28, 2019, Stevens continued his employment with AEO for over a year. (J.M. Decl., Dkt. 1-1, ¶ 8.) Consideration can also be demonstrated under Illinois law by mutuality of obligation. *See Medina*, 2002 WL 389628, at *2. Indeed, courts in the Seventh Circuit have repeatedly found sufficient consideration from the parties' mutual agreement to arbitrate with each other. *See, e.g.*, *Koveleskie v. SBC Capital Mkts., Inc.*, 167 F.3d 361, 368 (7th Cir. 1999) (reversing district court's denial of motion to compel arbitration and holding that an arbitration agreement signed as a condition of employment was supported by adequate consideration when both parties were bound by the terms of the agreement); *Medina*, 2002 WL 389628, at *2 ("Illinois law regarding the mutuality of obligation – essentially, the common law principle of consideration – requires only that both parties be bound by the agreement . . . The parties' obligations need not be identical."). Here, the

terms of the DRP Agreement apply equally to Defendants. (*See* Miele Decl., Ex. A at 102.) ("AEO and [Stevens] mutually agree to resolve by final and binding arbitration all claims or controversies, past, present or future, arising out of or related to [Stevens']…employment.").) Accordingly, AEO's agreement to bind itself to the DRP Agreement and foreclose its right to seek redress in the courts constitutes sufficient consideration.

All three elements of contract formation—offer, acceptance, and consideration—are present here. The DRP Agreement is a valid and enforceable contract binding Stevens to arbitration, all of which he must pursue on an individual basis. It is Stevens' burden to demonstrate the DRP Agreement is unenforceable and he cannot do so. *See Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987). Thus the DRP Agreement is valid and binding on Stevens.

### 4.    Stevens' Claims Fall within the Scope of the DRP Agreement.

Not only is the DRP Agreement between Stevens and AEO legally enforceable, but Stevens' claims also clearly fall within the scope of the DRP Agreement. A court may not deny a party's request to arbitrate an issue "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960). Importantly, "[a]bsent some ambiguity in the agreement, it is the language of the contract that defines the scope of disputes subject to arbitration." *Waffle House, Inc.*, 534 U.S. at 289.

In the Complaint, Stevens alleges violations of BIPA solely arising from and related to his employment with AEO. (*See* Compl., Dkt. 1-1, ¶¶ 5, 27-33.) In the DRP Agreement, Stevens specifically agreed that "this Program applies to any dispute arising out of or related to your employment with AEO," including "[a]ll disputes relating to the employment relationship and obligations we may owe one another," and "[c]laims for violation of any federal, state or other

governmental law, common law, constitution, statute, regulation, or ordinance." (*See* Miele Decl., Ex. A at 102-03.) Stevens' statutory BIPA claims indisputably fall within the broad scope of the DRP Agreement and thus, within the scope of the parties' agreement to mediate and arbitrate. *See Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 910 (7th Cir. 1999) (holding that broad arbitration clauses necessarily create a presumption of arbitrability). Thus, because the DRP Agreement is legally enforceable under Illinois and federal law, and because Stevens' claims are within the scope of the DRP Agreement, this Court must compel arbitration.

### 5. The Court Should Dismiss the Complaint as to Stevens or, in the Alternative, Stay the Proceedings.

The Court should dismiss this action. When a court determines that all of a plaintiff's claims are subject to arbitration, the complaint should be dismissed. *See Chausse v. Career Educ. Corp.*, No. 16 C 164, 2017 WL 1428733, at *3 *N.D. Ill. Apr. 20, 2017) ("in light of the fact that…the entire controversy between the parties will be resolved by arbitration, the Court dismisses his action without prejudice"); *see also Dalope v. United Health Care of Ill.*, No. 03 C 8918, 2004 WL 2325688, at *2 (N.D. Ill. Oct. 8, 2004) ("Because all issues raised in this action must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose."); *Chambers v. Aviva Life & Annuity Co.*, No. 12 C 9589, 2013 WL 1345455, at *5 (N.D. Ill. Mar. 26, 2013) (collecting cases). Stevens' claims against Defendants are subject to binding arbitration. Accordingly, dismissal is the appropriate remedy. *See Johnson v. W. & S. Life Ins. Co.*, 598 F. App'x 454, 456 (7th Cir. 2015). If the Court determines dismissal is inappropriate, it must stay the proceedings pending arbitration. *See* 9 U.S.C. § 3; *Olivares v. Uber Techs., Inc.*, No. 16 C 6062, 2017 WL 3008278, at *4 (N.D. Ill. July 14, 2017).

## IV.    CONCLUSION

For the foregoing reasons, Defendants American Eagle Outfitters, Inc., AE Retail West, Inc., and AE Corporate Services Co. respectfully request that this Court enforce the DRP Agreement and compel Plaintiff Maurice Stevens to resolve his claims against Defendants individually through arbitration. Defendants further request that the Court dismiss the Complaint as to Stevens or, in the alternative, stay this action as to Stevens pending completion of arbitration, and award Defendants their reasonable costs and attorneys' fees incurred in bringing this Motion.


Dated: April 2, 2021                          Respectfully submitted,

                                              **AMERICAN EAGLE OUTFITTERS,**
                                              **INC., AE RETAIL WEST, LLC, and AE**
                                              **CORPORATE SERVICES CO.**


                                              /s/ Orly Henry
                                              _____
                                                         One of Their Attorneys


Kwabena A. Appenteng
*kappenteng@littler.com*
Orly Henry
*ohenry@littler.com*
Littler Mendelson, P.C.
321 North Clark Street, Suite 1100
Chicago, Illinois 60654
Phone: (312) 372-5520

Patricia J. Martin
*pmartin@littler.com*
Littler Mendelson, P.C.
600 Washington Avenue, Suite 900
St. Louis, Missouri 63101
Phone: (314) 659-2000

## <u>CERTIFICATE OF SERVICE</u>

       I, Orly Henry, an attorney, hereby certify that on April 2, 2021, I caused a true and correct copy of the foregoing document to be filed electronically with the Clerk of the Court, using the court's CM/ECF system, which will provide notice to the following counsel of record:

David Fish
*dfish@fishlawfirm.com*
Mara Baltabols
*mara@fishlawfirm.com*
The Fish Law Firm, P.C.
200 East Fifth Avenue, Suite 123
Naperville, Illinois 60563


                                    /s/ Orly Henry
                                    *One of Defendants' Attorneys*

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **MAURICE STEVENS** and **KRYSTYNA HARE**, individually and on behalf of all others similarly situated, | Case No. 21-cv-01062 |
| Plaintiffs, | Honorable Charles P. Kocoras |
| v. | Magistrate Judge Maria Valdez |
| **AMERICAN EAGLE OUTFITTERS, INC.** and **AE RETAIL WEST, LLC** and **AE CORPORATE SERVICES CO.**, | |
| Defendants. | |

**DECLARATION OF JENNIFER MIELE IN SUPPORT OF**
**DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

COMES NOW Jennifer Miele and, pursuant to 28 U.S.C. § 1746, declares as follows:

1.      I am currently employed by American Eagle Outfitters, Inc. ("AEO") as Vice President, Human Resources—Commercial. I have been with AEO since May 2013. In the course and scope of my position, I am familiar with and have access to information regarding AEO's business operations as well as information regarding its employment practices.

2.      This Declaration is based on my personal knowledge, and if called to testify as to the facts set forth in this Declaration, I could and would competently testify to those facts. I make this declaration in support of Defendants AEO, AE Retail West, Inc., and AE Corporate Services Co.'s Motion to Compel Arbitration and Stay Proceedings.

3.      AEO operates nationwide, with more than 760 American Eagle stores in all 50 U.S. states, including Illinois. AEO's products, which include clothing, accessories, and personal care products, regularly cross state lines.

4.      In my capacity as Vice President, Human Resources—Commercial, I have access to and I am familiar with AEO's business records related to employees such as Plaintiff Maurice Stevens ("Stevens").

5.      As part of the onboarding process, Stevens was presented with a document entitled the Dispute Resolution Program ("DRP") and given the opportunity to review its terms. Attached as **Exhibit A** is a true and correct copy of the DRP.

6.      Stevens electronically signed an Acknowledgement and Agreement of the DRP ("DRP Acknowledgement") via AEO's online onboarding platform Taleo (referred to internally as "Nest Recruiting & Onboarding"). Stevens' DRP Acknowledgement is dated 10/28/2019, which reflects the date that Stevens affixed his electronic signature to the document. This acknowledgement also captures the IP address of the computer that was used to access, review, and acknowledge the DRP Acknowledgement. A true and correct copy of the Acknowledgement and Agreement is attached as **Exhibit B**.

7.      Since approximately June 2017, all onboarding documents – including executed DRP Acknowledgements–and other certain personnel documents are stored electronically and in a confidential and secure manner such that they are accessible only to Human Resources Information System employees and certain Human Resource employees using their own unique login information.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April  |  , 2021.


Jennifer Miele

# EXHIBIT A

# The A E O Dispute Resolution Program

SCOPE OF THE PROGRAM.........102

CLAIMS COVERED BY
THE PROGRAM ............................102

CLAIMS NOT COVERED BY THE
PROGRAM.......................................104

CLASS ACTION WAIVER ............. 104

MEDIATION ...................................104
What Is Mediation & How Does
It Work?.................................................104
How Is Mediation Requested?.........105

TIME LIMITATIONS FOR
COMMENCING ARBITRATION
& REQUIRED NOTICE OF
ALL CLAIMS ...................................105
How Long Does a Party Have to
Request Arbitration? .........................105
How Is Arbitration Requested? ....... 106

ARBITRATION PROCEDURES.....106
What Procedural Rules Govern
the Arbitration?...................................106
Specific Procedural Rules .................106
Specific Rules
Related to Discovery..........................107
Arbitration Fees and Costs............... 107
Judicial Review ...................................108

ANTI-RETALIATION......................108

SOLE AND ENTIRE
AGREEMENT..................................108

CONSTRUCTION ..........................108

CONSIDERATION .........................108

AT-WILL EMPLOYMENT...............108

DISPUTE RESOLUTION

# THE A E O DISPUTE RESOLUTION PROGRAM

At American Eagle Outfitters ("AEO"), we are proud of our open-door, open-minded culture. Because you are a valued member of the AEO team, we appreciate open and honest communication and want you to feel confident in discussing any issue with the person or people directly involved. As provided in our Code of Ethics and Workplace Culture Policy, we encourage you to report concerns to your manager or another manager, to Human Resources, or through our Hotline.

We recognize, however, that there may be disputes that you and AEO cannot resolve through open door channels. The American Eagle Outfitters Dispute Resolution Program and Agreement ("Program" or "Agreement") was created for those situations. It provides a way for you and AEO to resolve certain differences through mediation or binding arbitration rather than through court proceedings. Because we believe this method of resolving claims that cannot be completely addressed through our open-door culture is the best approach, your decision to apply for or continue employment with AEO and/or your signature below constitutes your acceptance of the Dispute Resolution Program.

## Scope of the Program

Any reference in this Program to AEO also will be a reference to all parents, subsidiaries, partners, divisions, and affiliated entities, and any companies that are acquired by AEO or its subsidiaries, parents, partners, divisions, or affiliates, and all benefit plans, the benefit plans' sponsors, fiduciaries, administrators, affiliates, and all successors and assigns of any of them.

This Program is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq., and evidences a transaction involving commerce.

## Claims Covered by the Program

Except for claims excluded below, this Program applies to any dispute arising out of or related to your employment with AEO or the termination of your employment with AEO. Under this Program, AEO and you mutually agree to resolve by final and binding arbitration all claims or controversies , past, present or future, arising out of or related to your application for employment, employment, and/or the termination of your employment that AEO may have against you or that you may have against any of the following: (1) AEO; (2) AEO's past, current and future officers, directors, Associates, or agents in their capacity as such or otherwise; (3) AEO's parent, subsidiary and affiliated entities; (4) AEO's benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates, Associates and agents; and (5) all successors and assigns of any of them. This Program requires all such claims to be resolved by an arbitrator through final and binding arbitration (unless the parties are able to work out a resolution among themselves or through the mediation procedure discussed below) and not by way of court or a jury trial.

That said, this Program is intended to apply only to the resolution of disputes that otherwise could be resolved in a court of law. Thus, the only claims that are subject to arbitration and mediation are those that, in the absence of this Program, could have been asserted in court under applicable state or federal law, including, but not limited to:

- All disputes relating to the employment relationship and obligations we may owe one another;

- Claims for unfair competition and violation of trade secrets;

- Claims incidental to the employment relationship but arising after that relationship ends (including, but not limited to, claims arising out of or related to post-termination defamation or job references, claims arising out of or related to any Associate purchase disputes and claims arising out of or related to post-employment retaliation);

- Claims for wages or other types of compensation due (including, but not limited to, claims for minimum wage violations, unpaid overtime, misclassification of exempt status, rest and meal breaks, commissions, bonuses and overpayment of wages, as well as related claims for damages, restitution, interest and penalties and claims asserted under any wage payment laws);

- Claims for breach of any contract or covenant (express or implied);

- Tort or statutory claims for discrimination and/or harassment (including, but not limited to, race, sex, sexual orientation, religion, national origin, age, workers' compensation, military status, pregnancy, marital status, medical condition, handicap or disability, gender identity and expression, genetic information, as well as harassment claims based on such categories);

- Claims for all types of fringe benefits (except claims under an employee benefit or pension plan that either (1) specifies that its claims procedure shall culminate in an arbitration procedure different from this one or (2) is underwritten by a commercial insurer that decides claims);

- Claims for retaliation, wrongful termination, violation of public policy, personal injury, negligence and unsafe working conditions; and

- Claims for violation of any federal, state or other governmental law, common law, constitution, statute, regulation, or ordinance, including, but not limited to, the Uniform Trade Secrets Act, Title VII of the Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act, Genetic Information Non-Discrimination Act, Uniformed Services Employment and Reemployment Rights Act, Worker Adjustment and Retraining Notification Act, Older Workers Benefits Protection Act of 1990, Occupational Safety and Health Act, Consolidated Omnibus Budget Reconciliation Act of 1985, False Claims Act, California Fair Employment and Housing Act, California Family Rights Act, California Labor Code, California Code of Regulations, Title 8, section 11070 and California Industrial Welfare Commission Wage Orders.

Nothing in this Program prevents you from making a report to or filing a claim or charge with a governmental agency, including without limitation, the Equal Employment Opportunity Commission, U.S. Department of Labor, Securities Exchange Commission, National Labor Relations Board, Occupational Safety and Health Administration, Office of Federal Contract Compliance Programs, or law enforcement agencies, and nothing in this Program prevents the investigation by a government agency of any report, claim or charge otherwise covered by this Program. This Program also does not prevent federal administrative agencies from adjudicating claims and awarding remedies based on the claims addressed in this paragraph, even if the claims would otherwise be covered by this Program. Nothing in this Program prevents or excuses a party from exhausting administrative remedies by filing any charges or complaints required by any governmental agency (including without limitation the Equal Employment Opportunity Commission and/or similar state or

local agency) before bringing a claim in arbitration. AEO will not retaliate against you for filing a claim with an administrative agency or for exercising rights (individually or in concert with others) under Section 7 of the National Labor Relations Act.

# Claims Not Covered by the Program

Claims for workers' compensation benefits, state disability insurance benefits and unemployment compensation benefits are not covered by this Program. Claims brought in small claims court, or a state's equivalent court, are not covered by this Program so long as such claims are brought only in that court. If any such claim is transferred or appealed to a different court, you or AEO may require arbitration, and the conduct of any party during the small claims proceeding shall not be a ground for waiver of the right to arbitrate. Disputes that may not be subject to a predispute arbitration agreement as provided by the Dodd-Frank Wall Street Reform and Consumer Protection Act (Public Law 111-203) or other controlling federal statute are excluded from the coverage of this Program. Also not covered under this Agreement are Private Attorneys General Act representative claims brought on behalf of the state under the California Labor Code – which must be maintained in a court of law. However, a claim by you on your own behalf as an aggrieved Associate for recovery of underpaid wages (as opposed to a representative claim for civil penalties) is arbitrable under this Agreement.

The parties may also pursue temporary and/or preliminary injunctive relief in a court of competent jurisdiction – because the award to which the party may be entitled in arbitration may be rendered ineffectual without such relief. Examples of such claims, without limitation, are tortious interference with prospective employment, the protection of confidential information, trade secret violations, prevention of unfair competition or enforcement of post-employment contractual restrictions related to same; provided, however, that all issues of final relief shall continue to be decided through arbitration, and the pursuit of the temporary and/or preliminary injunctive relief described herein shall not constitute a waiver of the parties' agreement to arbitrate by any party.

# Class Action Waiver

There will be no right or authority for any dispute to be brought, heard, or arbitrated as a class and/or collective action ("Class Action Waiver"), nor shall the Arbitrator have any authority to hear or arbitrate any such dispute. The Class Action Waiver will be severable from this Agreement in any case in which there is a final judicial determination that the Class Action Waiver is invalid, unenforceable, unconscionable, void or voidable. In such case, the class action and/or collective action must be litigated in a civil court of competent jurisdiction – not in arbitration.

Regardless of anything else in this Program and/or any rules or procedures that might otherwise be applicable by virtue of this Program or by virtue of any arbitration organization rules or procedures that now apply or any amendments and/or modifications to those rules, the interpretation, applicability, enforceability or formation of this Class Action Waiver, including, but not limited to, any claim that all or part of this Class Action Waiver is unenforceable, unconscionable, void or voidable, may be determined only by a court of competent jurisdiction and not by an arbitrator.

# Mediation
## What Is Mediation and How Does It Work?

In order for mediation to occur under this Program, both you and AEO must mutually agree to participate in it. At any point prior to arbitration, you and AEO

both may agree to present the claims at issue to a neutral third party, called a Mediator, who will assist in resolving them.

When you and AEO request mediation, the American Arbitration Association ("AAA") will assign a professional Mediator, unless you and AEO are able to mutually agree upon a mediator to mediate the dispute. The first mediation meeting will be arranged at a convenient location after the Mediator is selected. You and representatives from AEO will meet with the Mediator, who will guide your discussions and help you work out your differences. The Mediator may meet separately and confidentially with you and with AEO to develop a better understanding of the problem and help you resolve it. While mediation is usually successful in helping the parties reach a settlement, if it is not successful, you or AEO still have the option to take your dispute to arbitration for a final and binding decision.

## How Is Mediation Requested?

To request mediation, you may send a Request for Mediation to American Eagle Outfitters, Inc., ATTN: Legal Department, 77 Hot Metal Street, Pittsburgh, PA 15203. A Request for Mediation to you will be sent to the last home address you provided in writing to AEO. The Request for Mediation shall clearly state "Request for Mediation" at the beginning of the first page and shall identify and describe the nature of all claims asserted and the facts upon which such claims are based and the relief or remedy sought. The Request for Mediation shall be sent to the other party by certified or registered mail, return receipt requested, and first class mail. Upon receipt or issuance of a Request for Mediation, AEO, should it also wish to participate in mediation of your claim, will send a copy of the request to either AAA or JAMS to initiate the mediation. AEO will pay any fees or charges from JAMS, AAA or the mediator associated with the mediator's service. A party seeking to mediate any claims under this Program must make a written "Request for Mediation" to the other party no later than the expiration of the statute of limitations (deadline for filing) that applicable state or federal law prescribes for the claim at issue. Where mediation occurs, the statute of limitations for requesting arbitration will be tolled from the date the Request for Mediation is received until the mediation is concluded.

Neither you nor AEO is obligated to utilize this mediation procedure in order to pursue arbitration. This voluntary mediation procedure is not a prerequisite for requesting arbitration.

# Time Limitations for Commencing Arbitration & Required Notice of All Claims

## How Long Does a Party Have to Request Arbitration?

A party asserting any claims under this Program must make a written Request for Arbitration of any claim to the other party no later than the expiration of the statute of limitations (deadline for filing) that applicable state or federal law prescribes for the claim. The parties are encouraged to make a written Request for Arbitration of any claim as soon as possible after the event or events in dispute so that arbitration of any differences may take place promptly.

# How Is Arbitration Requested?

A Request for Arbitration to AEO or its officers, directors, Associates or agents, shall be sent to American Eagle Outfitters, Inc. Legal Department, 77 Hot Metal Street, Pittsburgh, PA 15203. A Request for Arbitration to you will be sent to the last home address you provided in writing to AEO. The Request for Arbitration shall, unless otherwise required by law, clearly state "Request for Arbitration" at the beginning of the first page and shall identify and describe the nature of all claims asserted and the facts upon which such claims are based and the relief or remedy sought. The Arbitrator shall resolve all disputes regarding the timeliness or legal sufficiency of the Request for Arbitration.

# Arbitration Procedures

## What Procedural Rules Govern the Arbitration?

Unless the parties mutually select an arbitrator, www.adr.org, www.jamsadr.com, the arbitration will be held under the auspices of the American Arbitration Association ("AAA"), and, except as provided in this Program, shall be in accordance with the then current Employment Arbitration Rules and Mediation Procedures of the AAA ("AAA Rules"). The AAA Rules are available at www.adr.org/employment or by using a service such as www.google.com or www.Bing.com to search for "AAA Employment Arbitration Rules. If there is a conflict between the AAA Rules and this Agreement, this Agreement shall control. Additionally, nothing in the AAA Rules or any arbitration sponsoring organization's rules or procedures and/or any modification to them shall affect the enforceability and validity of the Class Action Waiver, including, but not limited to, the provision that the enforceability of the Class Action Waiver may be determined only by a court and not by an arbitrator.

Unless the parties jointly agree otherwise, the Arbitrator must be an attorney experienced in employment law and licensed to practice law in the state in which the arbitration is convened, or a retired judge from any jurisdiction. Unless the parties jointly agree otherwise, the arbitration will take place in or near the city where I am currently employed or was last employed by the Company.

In the event the parties do not mutually choose an arbitrator, the Arbitrator will be selected as follows: The AAA will give each party a list of seven (7) arbitrators (who are subject to the qualifications listed in the preceding paragraph) drawn from its panel of arbitrators. Each party will have ten (10) calendar days to strike all names on the list it deems unacceptable. If only one common name remains on the lists of all parties, that individual will be designated as the Arbitrator. If more than one common name remains on the lists of all parties, the parties will strike names alternately from the list of common names by telephone conference administered by AAA, with the party to strike first to be determined by a coin toss conducted by AAA, until only one remains. If no common name remains on the lists of all parties, the AAA will furnish an additional list of seven (7) arbitrators from which the parties will strike alternately by telephone conference administered by AAA, with the party to strike first to be determined by a coin toss conducted by AAA, until only one name remains. That person will be designated as the Arbitrator. If the individual selected cannot serve, AAA will issue another list of seven (7) arbitrators and repeat the alternate striking selection process.

## Specific Procedural Rules

The Arbitrator shall have the authority to entertain a motion to dismiss and/or a motion for summary judgment by any party and shall apply the standards governing such motions under the Federal Rules of Civil Procedure. The Arbitrator shall apply the

substantive law including, but not limited to, applicable statutes of limitations (and the law of remedies, if applicable) of the state in which the claim arose, or federal law, or both, as applicable to the claim(s) asserted. The Federal Rules of Evidence shall apply. The Arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Program, including, but not limited to, any claim that all or part of this Program is void or voidable. As stated in the "Class Action Waiver" above, however, the preceding sentence shall not apply to the clause entitled "Class Action Waiver."

Any party, upon request at the close of hearing, shall be given leave to file a post-hearing brief with the Arbitrator and serve it on the other party. The time for filing and service of such a brief shall be set by the Arbitrator, but in no event shall it be less than 30 days from the close of the arbitration.

The Arbitrator may award any party any remedy to which that party is entitled in his or her individual capacity under applicable law (including, without limitation, legal, equitable and injunctive relief), but such remedies shall be limited to those that would be available to a party in a court of law for the claims presented to and decided by the Arbitrator.

The Arbitrator shall render an award by written opinion no later than thirty days from the date the arbitration hearing concludes or the posthearing briefs (if requested) are received, whichever is later, unless the parties agree otherwise. The opinion shall be in writing, state the essential findings of fact and conclusions of law, and shall specifically include the factual and legal basis for the award.

## Specific Rules Related to Discovery

Each party shall have the right to take the deposition of two individuals and any expert witnesses designated by another party. Each party also shall have the right to propound requests for production of documents to any party. In addition, each party shall have the right to subpoena witnesses and documents for the arbitration and during the course of discovery. The Arbitrator shall have exclusive authority to consider and enter orders concerning any issue related to the quantity or conduct of discovery. Each party to this Program can request that the Arbitrator allow additional discovery, and additional discovery may be conducted pursuant to the parties' mutual stipulation or as ordered by the Arbitrator. This discovery provision applies only to arbitration of claims, not mediation.

## Arbitration Fees and Costs

In all cases where required by law, AEO will pay the Arbitrator's and arbitration fees and costs. If under applicable law AEO is not required to pay all of the Arbitrator's and/or arbitration fees and costs, such fees and costs will be apportioned between the parties in accordance with applicable law. The Arbitrator shall determine all factual and legal issues regarding the payment and/or apportionment of fees and costs.

Each party shall pay for its own costs and attorneys' fees, if any. If, however, any party prevails on a claim which affords the prevailing party attorneys' fees and costs, or if there is a written agreement providing for fees and costs, the Arbitrator may award reasonable fees and costs to the prevailing party as provided by law or agreement of the parties.

In the event the law (including the common law) of the jurisdiction in which the arbitration is held requires a different allocation of arbitral fees and costs in order for this Program to be enforceable, then such law shall be followed.

## Judicial Review

Judicial review shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 9-11. The decision of the Arbitrator may be entered and enforced as a final judgment in any court of competent jurisdiction.

# Anti-Retaliation

It is against AEO policy for anyone to be subject to retaliation if he or she exercises his or her right to assert claims under this Program. If you believe that you have been retaliated against by anyone at AEO, you must immediately report the retaliation to the Human Resources Department.

# Sole and Entire Agreement

This is the complete agreement of the parties on the subject of arbitration of disputes. This Program shall survive the termination of your employment and the expiration of any benefits, and will apply upon re-employment by AEO if your employment is ended but later renewed. Unless this Program in its entirety is deemed void, unenforceable or invalid, this Program supersedes any prior or contemporaneous oral or written understandings on the subject. No party is relying on any representations, oral or written, on the subject of the effect, enforceability or meaning of this Program, except as specifically set forth in this Program.

# Construction

Except as provided in the clause entitled "Class Action Waiver," above, if any provision of this Program is deemed to be void or voidable or otherwise unenforceable, in whole or in part, such provision shall be severed from this Program, and the adjudication shall not affect the validity of the remainder of the Program. All remaining provisions shall remain in full force and effect. A waiver of one or more provisions of this Program by any party shall not be a waiver of the entire Program.

# Consideration

The mutual obligations by you and AEO to arbitrate differences provide consideration for each other.

# At-Will Employment

This Program does not in any way alter the "at-will" status of your employment.

# EXHIBIT B

# THE AEO
# DISPUTE RESOLUTION PROGRAM

## <u>Acknowledgment And Agreement</u>

I ACKNOWLEDGE AND AGREE THAT I HAVE RECEIVED AND CAREFULLY READ THIS DISPUTE RESOLUTION PROGRAM AND THAT I UNDERSTAND AND AGREE TO ITS TERMS. BY APPLYING FOR EMPLOYMENT OR CONTINUING MY EMPLOYMENT WITH AEO AND/OR BY SIGNING BELOW, I AGREE TO THIS PROGRAM AND AGREE THAT I AND AEO WILL ARBITRATE CLAIMS COVERED BY THIS PROGRAM.


_____     _____
Applicant/Associate Signature                          Date


_____     _____
APPLICANT/ASSOCIATE NAME PRINTED                       IP Address


ACCEPTED AND AGREED TO: *AMERICAN EAGLE OUTFITTERS, INC.*