IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **KRYSTYNA HARE** and **MAURICE STEVENS** individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>**AMERICAN EAGLE OUTFITTERS, INC.** and **AE RETAIL WEST, LLC** and **AE CORPORATE SERVICES CO.,**<br><br>Defendants. | No. 21-cv-01062<br><br>Honorable Charles P. Kocoras<br>Magistrate Judge Maria Valdez |

## AMENDED CLASS ACTION COMPLAINT

Plaintiff Maurice Stevens ("Stevens") and Krystyna Hare ("Hare") (collectively referred to as "Plaintiffs") bring this Amended Class Action Complaint against Defendants American Eagle Outfitters, Inc. and AE Retail West, LLC and AE Corporate Services Co, collectively, "American Eagle" or "Defendants") to put a stop to their unlawful collection, use, and storage of Plaintiffs' and the putative Class members' sensitive biometric data. Plaintiffs, for Plaintiffs' Class Action Complaint, allege as follows upon personal knowledge as to Plaintiffs' own acts and experiences and, as to all other matters, upon information and belief.

## NATURE OF THE ACTION

1. American Eagle Outfitters, Inc. (publicly traded as "AEO" on the NYSE) is a leading global specialty retailer offering high-quality, on-trend clothing, accessories and personal care products under its American Eagle® and Aerie® brands. It operates more than 1,000 stores in the United States, Canada, Mexico, and Hong Kong, and ships to 81 countries worldwide through its websites.

2. When employees first begin their jobs at American Eagle, they are required to scan

their fingerprint in its biometric point-of-sale system as a means of authentication, instead of using only key fobs or other identification cards.

3. While there are tremendous benefits to using biometric point of sale system in the workplace, there are also serious risks. Unlike key fobs or identification cards—which can be changed or replaced if stolen or compromised—fingerprints are unique, permanent biometric identifiers associated with the employee. This exposes employees to serious and irreversible privacy risks. For example, if a fingerprint database is hacked, breached, or otherwise exposed, employees have no means by which to prevent identity theft and unauthorized tracking.

4. Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), specifically to regulate companies that collect and store Illinois citizens' biometrics, such as fingerprints.

5. Despite this law, American Eagle disregarded its employees' statutorily protected privacy rights and unlawfully collects, stores, and uses their biometric data in violation of the BIPA. Specifically, American Eagle has violated (and continues to violate) the BIPA because it did not:

- Properly inform Plaintiffs and the Class members in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, and used, as required by the BIPA;

- Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiffs' and the Class's fingerprints, as required by the BIPA; nor

- Receive a written release from Plaintiffs or the members of the Class to collect, capture, or otherwise obtain fingerprints, as required by the BIPA.

6. Accordingly, this Complaint seeks an order: (i) declaring that Defendants' conduct violates the BIPA; (ii) requiring Defendants to cease the unlawful activities discussed herein; and (iii) awarding liquidated damages to Plaintiffs and the proposed Class.

## PARTIES

7. Plaintiffs are natural persons and citizens of the State of Illinois.

8. Defendant American Eagle Outfitters, Inc. is a Delaware corporation with its principal place of business in Pennsylvania. It operates in part in Illinois through its indirect subsidiary AE Retail West, LLC which is a Delaware LLC with its principal place of business in Pennsylvania and AE Corporate Services Co. is a Delaware Corporation that has its principal place of business in Pennsylvania. AE Retail West, LLC and AE Corporate Services Co. each paid the Plaintiffs when they worked for American Eagle. The Defendants collectively operate 33 stores in Illinois including several in Cook County, Illinois.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over Defendants pursuant to 735 ILCS 5/2-209 because Defendants conduct business transactions in Illinois and have committed tortious acts in Illinois.

10. Venue is proper in Cook County because Defendants operate throughout this County and reside in Cook County within the meaning of 735 ILCS § 5/2-102(a).

## FACTUAL BACKGROUND

**I. The Biometric Information Privacy Act.**

11. In the early 2000's, major national corporations started using Chicago and other locations in Illinois to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(b). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing, yet unregulated technology. *See* 740 ILCS 14/5.

12. In late 2007, a biometrics company called Pay By Touch—which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer

3

transactions—filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records—which, are unique biometric identifiers, can be linked to people's sensitive financial and personal data—could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who had used that company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that unique biometric identifiers could now be sold to unknown third parties.

13. Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted the BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

14. The BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it *first*:

> (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information.

740 ILCS 14/15(b).

15. BIPA specifically applies to employees who work in the State of Illinois. BIPA

4

defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

16. Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and—most importantly here—fingerprints. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *See id.*

17. The BIPA also establishes standards for how employers must handle Illinois employees' biometric identifiers and biometric information. *See* 740 ILCS 14/15(c)–(d). For instance, the BIPA requires companies to develop and comply with a written policy—made available to the public—establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

18. Ultimately, the BIPA is simply an informed consent statute. Its narrowly tailored provisions place no absolute bar on the collection, sending, transmitting or communicating of biometric data. For example, the BIPA does not limit what kinds of biometric data may be collected, sent, transmitted, or stored. Nor does the BIPA limit to whom biometric data may be collected, sent, transmitted, or stored. The BIPA simply mandates that entities wishing to engage in that conduct must make proper disclosures and implement certain reasonable safeguards.

**II.    American Eagle Violates the Biometric Information Privacy Act.**

19. By the time the BIPA passed through the Illinois Legislature in mid-2008, many companies who had experimented with using biometric data as an authentication method stopped doing so, at least for a time. That is because Pay By Touch's bankruptcy, described in Section I

above, was widely publicized and brought attention to consumers' discomfort with the use of their biometric data.

20. Unfortunately, American Eagle failed to take note of the passage of the BIPA. American Eagle continued to collect, store, and use its employees' biometric data in violation of the BIPA.

21. Specifically, when employees work at American Eagle, they are required to have their fingerprints scanned in order to enroll them in its fingerprint database.

22. American Eagle uses an employee point-of-sale system that requires employees to use their fingerprints as a means of authentication. Unlike a traditional point-of-sale system, employees have to use their fingerprint to access American Eagle's sale system.

23. American Eagle failed to inform its employees of the complete purposes for which it collects their sensitive biometric data or to whom the data is disclosed, if at all.

24. American Eagle similarly failed to provide its employees with a written, publicly available policy identifying its retention schedule, and guidelines for permanently destroying its employees' fingerprints when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by the BIPA. An employee who leaves the company does so without any knowledge of when their biometric identifiers will be removed from American Eagle databases—or if they ever will be.

25. The Pay By Touch bankruptcy that catalyzed the passage of the BIPA highlights why conduct such as American Eagle's —whose employees are aware that they are providing biometric identifiers but are not aware of to whom or the full extent of the reasons they are doing so—is so dangerous. That bankruptcy spurred Illinois citizens and legislators to realize a critical point: it is crucial for people to understand when providing biometric data who exactly is collecting

it, who it will be transmitted to, for what purposes, and for how long. But American Eagle disregards these obligations, and instead unlawfully collects, stores, and uses its employees' biometric identifiers and information without proper consent.

26. Ultimately, American Eagle disregards its employees' statutorily protected privacy rights by violating the BIPA.

## FACTS SPECIFIC TO PLAINTIFFS

27. Plaintiffs worked for American Eagle in Illinois.

28. As an employee, American Eagle required Plaintiffs to scan Plaintiffs' fingerprints so that it could use it as an authentication method. American Eagle subsequently stored Plaintiffs' fingerprint data in its databases.

29. American Eagle never informed Plaintiffs of the specific limited purposes or length of time for which it collected, stored, or used fingerprints.

30. Similarly, American Eagle never informed Plaintiffs of any biometric data retention policy it developed, nor whether it will ever permanently delete fingerprints.

31. Plaintiffs never signed a written release allowing American Eagle to collect or store fingerprints.

32. Plaintiffs have continuously and repeatedly been exposed to the risks and harmful conditions created by American Eagle violations of the BIPA alleged herein.

33. Plaintiffs now seek liquidated damages under BIPA as compensation for the injuries American Eagle has caused.

## CLASS ALLEGATIONS

34. **Class Definition**: Plaintiffs bring this action pursuant to 735 ILCS 5/2-801 on behalf of Plaintiffs and a Class of similarly situated individuals, defined as follows:

7

> All persons who had their fingerprints collected, captured, received, otherwise obtained, or disclosed by Defendants in Illinois.

The following people are excluded from the Class: (1) any Judge presiding over this action and members of their families; (2) American Eagle, American Eagle's subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or its parents have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

35. **Numerosity**: The exact number of Class members is unknown to Plaintiffs at this time, but it is clear that individual joinder is impracticable. American Eagle has collected, captured, received, or otherwise obtained biometric identifiers or biometric information from at least hundreds of employees who fall into the definition of the Class. Ultimately, the Class members will be easily identified through Defendants' records.

36. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

   a) whether Defendants collected, captured, or otherwise obtained Plaintiffs' and the Class's biometric identifiers or biometric information;

   b) whether Defendants properly informed Plaintiffs and the Class of its purposes for collecting, using, and storing their biometric identifiers or biometric information;

   c) whether Defendants obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiffs and the Class's biometric identifiers or biometric information;

      d) whether Defendants have sold, leased, traded, or otherwise profited from Plaintiffs and the Class's biometric identifiers or biometric information;

      e) whether Defendants developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction, whichever occurs first;

      f) whether Defendants comply with any such written policy (if one exists); and

      g) whether Defendants used Plaintiffs and the Class's fingerprints to identify them.

37. **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Class.

38. **Appropriateness**: This class action is appropriate for certification because class proceedings are superior to all others available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by American Eagle's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from American Eagle's misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual

controversies presented in their Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

**CAUSE OF ACTION**
**Violation of 740 ILCS 14/1,** *et seq.*
(**On Behalf of Plaintiffs and the Class**)

39. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

40. The BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data. Specifically, the BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless [the entity] first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information…." 740 ILCS 14/15(b) (emphasis added).

41. The BIPA also mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention (and—importantly—deletion) policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (*i.e.,* when the employment relationship ends); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

42. Unfortunately, American Eagle fails to comply with these BIPA mandates.

43. American Eagle qualifies as a "private entity" under the BIPA. *See* 740 ILCS 14/10.

44. Plaintiffs and the Class are individuals who had their "biometric identifiers" collected by American Eagle (in the form of their fingerprints), as explained in detail in Section II. *See* 740 ILCS 14/10.

45. Plaintiffs and the Class's biometric identifiers or information based on those biometric identifiers were used to identify them, constituting "biometric information" as defined by the BIPA. *See* 740 ILCS 14/10.

46. American Eagle violated 740 ILCS 14/15(b)(3) by failing to obtain written releases from Plaintiffs and the Class before it collected, used, and stored their biometric identifiers and biometric information.

47. American Eagle violated 740 ILCS 14/15(b)(1) by failing to inform Plaintiffs and the Class in writing that their biometric identifiers and biometric information were being collected and stored.

48. American Eagle violated 740 ILCS 14/15(b)(2) by failing to inform Plaintiffs and the Class in writing of the specific purpose and length of term for which their biometric identifiers or biometric information was being collected, stored, and used.

49. American Eagle violated 740 ILCS 14/15(a) by failing to publicly provide a retention schedule or guideline for permanently destroying its employees' biometric identifiers and biometric information.

50. By collecting, storing, and using Plaintiffs' and the Class's biometric identifiers and biometric information as described herein, American Eagle violated Plaintiffs' and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in the BIPA, 740 ILCS 14/1, *et seq*.

11

51. On behalf of themselves and the Class, Plaintiffs seek: (1) injunctive and equitable relief as is necessary to protect the interests of the Plaintiffs and the Class by requiring Defendants to comply with the BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (2) liquidated damages for each of Defendants' violations of the BIPA pursuant to 740 ILCS 14/20; and (3) reasonable attorneys' fees and costs and expenses pursuant to 740 ILCS 14/20(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, respectfully request that the Court enter an Order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiffs as representatives of the Class, and appointing their counsel as Class Counsel;

B. Declaring that Defendants' actions, as set out above, violate the BIPA;

C. Awarding statutory damages for each of Defendants' violations of the BIPA, pursuant to 740 ILCS 14/20;

D. Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including an Order requiring Defendants to collect, store, and use biometric identifiers or biometric information in compliance with the BIPA;

F. Awarding Plaintiffs and the Class their reasonable litigation expenses and attorneys' fees;

G. Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable; and

H. Awarding such other and further relief as equity and justice may require.

Dated: December 11, 2023 Respectfully submitted,

**Maurice Stevens and Krystyna Hare, individually and on behalf of all others similarly situated,**

By: /s/ David Fish
One of Plaintiffs' Attorneys

David Fish
dfish@fishlawfirm.com
Mara Baltabols
mara@fishlawfirm.com
FISH POTTER BOLAÑOS PC
111 EAST WACKER DRIVE, SUITE 2300
CHICAGO, ILLINOIS 60601
TEL. (312) 861-1500
*ATTORNEYS FOR PLAINTIFFS AND OTHERS SIMILARLY SITUATED*

13