IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **KRYSTYNA HARE** and **MAURICE STEVENS** individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**AMERICAN EAGLE OUTFITTERS, INC.** and **AE RETAIL WEST, LLC** and **AE CORPORATE SERVICES CO.**,<br><br>Defendants. | No. 21-cv-01062<br><br>Honorable Charles P. Kocoras<br><br>Magistrate Judge Maria Valdez |

**PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM OF LAW
IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

David Fish
Mara Baltabols
Fish Potter Bolaños PC
111 East Wacker Drive, Suite 2300
Chicago, Illinois 60601
Tel. (312) 861-1500
dfish@fishlawfirm.com
mara@fishlawfirm.com
*Attorneys for Plaintiffs and
Others Similarly Situated*

I.  **Introduction**

Plaintiff Krystyna Hare ("Hare") and Maurice Stevens ("Stevens) (collectively "Plaintiffs") bring this putative class action against Defendants American Eagle Outfitters, Inc., AE Retail West, LLC, and AE Corporate Services Co. (collectively, "Defendants") for allegedly unlawfully collecting, using, and storing their biometric data (*i.e.* fingerprints) in violation of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq*.

II. **Procedural History**

On January 13, 2021, Plaintiffs' Class Action Complaint was filed in the Circuit Court of Cook County, alleging that Defendants violated BIPA by requiring employees to use a biometric timekeeping system as part of their jobs. Dkt. No.1-1. On February 24, 2021, Defendants removed the Litigation from state court to the United States District Court for the Northern District of Illinois. Dkt. No. 1.

On September 22, 2022, Plaintiff Stevens was dismissed by agreement. Dkt. No. 40. Thereafter, Plaintiff Stevens filed an arbitration with the AAA, which the Parties eventually agreed to hold in abeyance while they discussed settlement.

On August 10, 2023, the Parties informed the Court that they reached a class-wide settlement. Dkt. No. 51. On November 28, 2023, the Court extended the deadline to file the Motion for Preliminary Approval to December 12, 2023, for Defendants to finalize the class list. Dkt. No. 55. On December 11, 2023, a Motion to Amend the Complaint was filed to re-add Plaintiff Stevens as a Class Representative. The Motion was granted, and on December 11, 2023, Plaintiffs filed an Amended Complaint. The Settlement is comprised of two subclasses.

**III.     Summary of Settlement Terms (<u>Exhibit 1</u>, Settlement Agreement)**

    **A.     The Proposed Settlement Class (Ex. 1, Settlement Agreement, ¶¶ 1.38, 1.39, 2.3)**

The Class Representatives seek preliminary approval of a Settlement Class consisting of the following subclasses:

> **Subclass A:** means All individuals who worked for Defendants in the State of Illinois and who enrolled in or used a fingertip scan point of sale system in connection with their work for Defendants from January 13, 2016 to January 13, 2021 and did not execute a Biometric Acknowledgment.
>
> **Subclass B:** means All individuals who worked for Defendants in the State of Illinois and who enrolled in or used a fingertip scan point of sale system in connection with their work for Defendants from January 13, 2016 to January 13, 2021 and executed a Biometric Acknowledgment.

The proposed Settlement Class includes a maximum total of 1,449 identified individuals who worked for Defendants during the class period and who used handscan and/or fingerscan timeclocks in conjunction with their employment. Of the 1,449 Settlement Class Members, 465 Class Members are in Subclass A and did not execute a Biometric Acknowledgment, and 984 Class Members are in Subclass B and did execute a Biometric Acknowledgement.

Pursuant to the Settlement, Defendants further agree to waive the arbitration agreements and include those with arbitration agreements in the Settlement Class. 982 of the 984 individuals with Biometric Acknowledgments (Subclass 2) appear to also have arbitration agreements.

    **B.     Settlement Fund; Allocation of the Fund; Payments to Class Members (Ex. 1, Settlement Agreement, ¶ 1.18)**

While denying all liability and wrongdoing, Defendants have agreed to pay a Gross Settlement Fund of $700,000. The Gross Settlement Amount equals the combined total of $1,100 per person for the 465 class members who did not execute a Biometric Acknowledgement ("Subclass A") or $511,500, and $191.57 per person for the 984 class members who did execute a Biometric Acknowledgement ("Subclass B") or $188,500.00. The Gross Settlement Amount shall

represent the total extent of Defendants' monetary obligations except that in the event that the class size increases, then the settlement amount shall increase proportionately, *i.e.*, if one or more additional members of Subclass A is found the settlement shall increase by $1,100 for each additional Subclass A member; or, if one or more additional members of Subclass B is found the settlement shall increase by $191.57 for each additional Subclass B member, up to a total of 30 additional Settlement Class Members. The Gross Settlement Amount includes all potential monies to be paid by Defendants in connection with the settlement, including, without limitation, the Service Awards, attorneys' fees, costs and expenses, interest, statutory and liquidated damages, penalties, and all costs of administration and notice. The Net Settlement shall be the Gross Settlement Amount less class attorneys' fees and litigation costs, Service Awards, settlement administration costs, including notice costs, and any other costs associated with the settlement.

Unless they exclude themselves, all Class Members will automatically be sent a settlement check. Because Class Members are not required to submit a claim to receive payment, the process is streamlined to ensure that all Class Members are able to participate.

    **C.    Uncashed Checks Will Be Distributed to Defendants and a *Cy Pres* Recipient (Ex. 1, Settlement Agreement, ¶ 2.3(e))**

All Class Members will have 150 days to cash settlement payments. Replacement checks may be requested during the 150-day check cashing period. Any checks that are uncashed after 150 days from their date of issuance thereby become null and void. After 150 days any additional Settlement Class Members beyond the 1,449 currently identified, if any and up to an additional 30 Settlement Class Members, will be paid their pro rata share of the Net Settlement Amount for the appropriate subclass out of the total amount of unclaimed funds. Only after the additional identified class members are paid out of the total amount of unclaimed funds shall any remaining unclaimed funds be divided, with 50% to revert to Defendants and 50% to be distributed to *cy pres* beneficiary

Prairie State Legal Services.

### D. Release of Claims (Ex. 1, Settlement Agreement, ¶ 3.1)

Class Members who do not exclude themselves will release the Releasees, as defined in the Settlement Agreement, from all claims relating to Plaintiffs' or the Class Members' biometric information while employed at Defendants, including by way of example, any claims arising out of or relating to Defendants' storage, collection, capture, possession, use, transfer, disclosure, or other handling of biometric identifiers or biometric information.

### E. Settlement Administration (Ex. 1, Settlement Agreement, ¶ 1.32)

The Parties have selected Analytics Consulting, LLC to act as the Settlement Administrator.

### F. Notice of Class Action Settlement (Ex. 1, Settlement Agreement, §4)

Among other things, the proposed Notice of Class Action Settlement ("Notice") explains the following to Settlement Class Members: (1) what the Settlement is about; (2) how the payment is made; (3) how to request exclusion, or how to submit an objection; (4) how to obtain more information about the Settlement; (5) the monetary terms of the Settlement and how individual payments will be calculated; (6) the maximum amounts to be requested for attorney fees, costs, settlement administration, and Service Awards; and (7) the Final Approval Hearing details.

### G. Distribution of Notice (Ex. 1, Settlement Agreement, ¶ 4.1(b), 4.1(c))

The Settlement Administrator will provide the Notice by direct mail. The Settlement Administrator may also send notice via email and/or text (where available). Before mailing, the Settlement Administrator will update Settlement Class Members' addresses by running their names and addresses through the National Change of Address ("NCOA") database. For Settlement Class Members whose notices are returned as undeliverable without a forwarding address, the

Settlement Administrator shall promptly run an advanced search to locate an updated address.

  **H.**  **Service Award (Ex. 1, Settlement Agreement, ¶ 2.1(a))**

Under the Settlement Agreement, Class Counsel may request that the Court award the Class Representatives up to $7,500 each as a Service Award for their work in prosecuting this lawsuit on behalf of the Settlement Class, providing detailed information to support the allegations, recovering money for the Settlement Class, and for their release of claims. Class Counsel will file the request for the Service Award with their motion for attorney fees and costs.

  **I.**  **Attorneys' Fees and Litigation Costs (Ex. 1, Settlement Agreement, ¶ 2.1(a))**

Under the Settlement Agreement, Class Counsel may request that the Court award them up to 33.33% of the Gross Settlement Fund as attorney fees plus their litigation costs. Class Counsel will file the request for attorneys' fees and litigation costs in advance of the Final Approval Hearing.

**IV.** **The Court Should Grant Preliminary Approval Because Settlement of Class Action Litigation is Favored.**

Federal courts favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see also* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (3d ed. 1992) (collecting cases). The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements:

> Preliminary approval of the proposed settlement at an informal hearing; Dissemination of mailed and/or published notice of the settlement to all affected class members; and A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Manual for Complex Lit.*, at § 21.632–34. This procedure safeguards the due process rights of absent class members and enables the Court to fulfill its role as the guardian of class interests. *See* 2 Newberg & Conte, at § 11.22, *et seq.* With this Motion, Plaintiffs request that the Court take the first step in the process by granting preliminary approval of the proposed Settlement.

"Under the new Rule 23(e), in weighing a grant of preliminary approval, district courts must determine whether 'giving notice is justified by the parties' showing that the court *will likely be able to*: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, Case No. 05-md-1720, 2019 WL 359981, at *12 (E.D.N.Y. Jan. 28, 2019) (citing Fed. R. Civ. P. 23(e)(1)(B)(i–ii)) (emphasis in original). As shown below, the Settlement satisfies these criteria and preliminary approval is justified.

### A. The Court Will Likely Be Able to Approve the Settlement Under Rule 23(e)(2)

#### 1. The Class Representatives and Class Counsel have Adequately Represented the Proposed Settlement Class – Rule 23(e)(2)(A)

Class Counsel and the Class Representatives pursued this case vigorously on behalf of a potential class. *See* Exhibit 3, Baltabols Declaration. As a result of Class Counsel's and the Class Representatives' sustained effort, diligent settlement negotiations, substantial experience in BIPA litigation, the Parties reached a Settlement that makes meaningful monetary relief available to Class Members, with an appropriately tailored release of claims.

#### 1. The Settlement Was Negotiated at Arm's Length – Rule 23(e)(2)(B)

The Settlement was the result of arm's-length negotiation between counsel experienced in BIPA litigation.

#### 3. The Settlement Provides Adequate Relief to the Class – Rule 23(e)(2)(C)

This Settlement here meets or exceeds other approved BIPA class settlements. *See, e.g.*,

*Marshall v. Lifetime Fitness, Inc.*, 2017-CH-14262 (Cir. Ct. Cook Cty.) ($270 per claimant with credit monitoring); *Taylor v. Sunrise Assisted Living,* 2017 CH 15152 (Cir. Ct. Cook Cty.) (BIPA settlement for between $40 and $115 per person); *Zhirovetskiy v. Zayo Group, LLC*, 2017 CH 09323 (Cir. Ct. Cook Cty.) (BIPA settlement of $400 per person with reversion); *Zepeda v. Kimpton Hotel & Restaurant Group, LLC*, 2018 CH 2140 (Cir. Ct. Cook Cty.) (BIPA settlement of $500 per person); *Sekura v. L.A. Tans Enterprises Inc.* 2015-CH-16694 (Cir. Ct. Cook Cty.)(BIPA settlement of $125 per person); *Sharrieff v. Raymond Mgmt Co*, 2018-CH-01496 (Cir. Ct. Cook Cty.) (BIPA settlement of $500 per person); *Dixon v. The Wash. & Jane Smith Home*, 1:17-cv-8033 (N.D. Ill. Aug. 20, 2019) (per member BIPA allocation of between $768 and $1,085); *Jones v. CBC Restaurants Corp, dba Corner Bakery*, 19-cv-6736 (N.D. Ill 2020) (per member BIPA allocation of $800 per person); *Martinez v. Nando's Restaurant Group, Inc.*, 2019-cv-7012 (N.D. Ill. 2020) (per member BIPA allocation of $1,000).

The Court should further evaluate the adequacy of relief based on the sub-factors below, Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv), each of which the Settlement satisfies.

### a. Costs, risks, and delay of trial and appeal

If the litigation had continued, it would have been complex, expensive, and protracted. The disputed issues, however, facilitated this Settlement as the Parties considered the risks of continued litigation. There were several issues that warranted a resolution of this case.

On February 2, 2023, the Illinois Supreme Court decided the *Tims v. Black Horse Carriers, Inc.* 2023 IL 127801, appeal and applied a limitations period of 5 years for violations of BIPA. The Parties agreed to settlement terms consistent with this limitations period.

Additionally, the Illinois Supreme Court decided the appeal of *Cothron v. White Castle Sys., Inc.*, 2023 IL 128004, 216 N.E.3d 918, *as modified on denial of reh'g* (July 18, 2023), which involves the question of accrual of a BIPA claim. The *Cothron* decision found in favor of accrual

8

at the time of each finger scan, not just the first. 2023 IL 128004, ¶ 1. The Illinois Supreme Court found that the statutory language clearly supports recovery for "each violation." *Id.* at ¶ 40. Yet, the Illinois Supreme Court recognized that a Court in equity has the discretion to fashion an appropriate damages award under BIPA to deter future misconduct. *Id.* ¶ 42.

For Subclass 2, the Biometric Acknowledgement and arbitration agreements were also a factor. Defendants agreed to waive the right to arbitrate, and the settlement value considered the potential consent to collection of biometric data.

### b. Effectiveness of the proposed method of distributing relief to Class Members

The Settlement Administrator will send Notice via direct mail and email and/or text (where available). Ex. 1, Settlement Agreement, ¶ 4.1(c). This notice program rivals those implemented in similar settlements. Class Members do not have to take any affirmative steps in order to receive a settlement payment. All Class Members will be mailed a check so long as they do not elect to exclude themselves from the settlement. The Settlement Administrator will distribute funds to Class Members via check to their last known mailing address.

### c. The terms of the proposed attorney fee award, including timing of payment

Settlement Class Counsel will seek an award of attorney fees of up to one third (1/3) of the Gross Settlement Fund plus litigation costs. Ex. 1, Settlement Agreement ¶ 8.1. The requested fee is equal to or below the fees awarded in similar BIPA class settlements. And the Settlement provides for payment of any attorney fees awarded at the same time as payments to Settlement Class Members; there is no priority for Settlement Class Counsel. Ex. 1, Settlement Agreement.

### d. Any Agreement required to be identified under Rule 23(e)(3)

The Settlement Agreement is <u>Exhibit 1</u> to this Motion. There are no side agreements regarding the Settlement Class or attorney fees related to this Settlement.

9

      **e. The Settlement Treats Settlement Class Members Equitably Relative to Each Other – Rule 23(e)(2)(D)**

The Settlement treats Class Members equally by distributing awards from the Net Settlement Fund on a *pro rata* basis based on their Subclass. Ex. 1, Settlement Agreement, ¶ 1.18. All employees who fall under the class definition will be sent a check to their last known address for their pro rata share of the net amount based on Subclass status. Those Class Members who signed an Biometric Acknowledgment are allocated a gross amount of $192.49 compared to $1,100 for Class Members who did not sign a Biometric Acknowledgement.

**B. The Court Will Likely Be Able to Certify the Settlement Class for Purposes of Judgment on the Settlement – Rule 23(e)(1)(B)(ii)**

    **1. Certification Will Be Appropriate Under Rule 23(a)**

To obtain class certification, Plaintiffs must demonstrate that their claims meet the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). As shown below, all of the elements of Rule 23(a) and (b)(3) are met here.

      **a. Numerosity**

Courts consistently hold that if there are more than 40 class members, numerosity is satisfied. *See, e.g., Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56 (N.D. Ill. 1996). The estimated class size here is 1,449, Ex. 1, Settlement Agreement, ¶ 1.18, which satisfies numerosity.

      **b. Commonality**

For a class to be certified, questions of law or fact must exist common to the class. Fed. R. Civ. P. 23(a)(2). Those common issues must be susceptible to common answers. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The claims of Class Members can be resolved in a "single stroke" by answering the following common question: did Defendants collect, possess, or disclose the biometric data without following BIPA's notice and consent requirements? Answering this common question resolves liability for all Class Members. Thus, commonality will be met here.

### c. Typicality

A claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and ... [the] claims are based on the same legal theory." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (citation omitted). The requirement is meant to ensure that the named representative's claims "have the same essential characteristics as the claims of the class at large." *Id.* (quotations and citation omitted).

The claims of the Settlement Class Representatives and Settlement Class Members arise from the same conduct: Defendants' alleged use of a biometric time keeping system for its Illinois employees; typicality will be met.

### d. Adequacy of the Class Representatives

The adequacy of representation component has three elements: (1) the claims of the class representative cannot conflict with the claims of the other class members; (2) the class representative's interest in the litigation outcome must be sufficiently strong to ensure that he is a vigorous advocate for the class; and, (3) counsel for the class representative must be competent, experienced, and able to conduct the litigation with that necessary vigor. *Gammon v. G.C. Servs., L.P.*, 162 F.R.D. 313, 317 (N.D. Ill. 1995). "The burden of demonstrating adequacy under this standard, nevertheless, is not a heavy one." *Nielsen v. Greenwood*, No. 91 C 6537, 1996 WL 563539, at *5 (N.D. Ill. Oct. 1, 1996).

#### i. The Class Representatives have an interest in the litigation and have no conflict with Class Members.

The Class Representatives allege the same biometric claims as Class Members and have no interests antagonistic to them. Thus, the Class Representatives have "a clear stake in a successful outcome – [] damages for [herself] and the class – that raises no specter of antagonistic interests." *Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *8-9 (N.D. Ill. Apr. 21,

11

2017). Plaintiffs assisted in any way that they were asked, engaging in many interviews and reviews of information with their attorneys. Together, the Class Representatives adequately represent both Subclasses.

### ii. Class Counsel is experienced and qualified.

Settlement Class Counsel will also fairly and adequately protect the interests of the Class Members. A court considers the following four factors when appointing class counsel: (1) the work counsel has performed in identifying the potential class claims; (2) class counsel's experience in handling complex litigation and class actions; (3) counsel's knowledge of the applicable law; and (4) the resources that class counsel will commit to representing the class. Fed. R. Civ. P. 23(g).

Class Counsel are experienced class action attorneys and have been appointed class counsel in numerous actions in federal and state courts, including other BIPA class actions. Examples of recent BIPA class-wide settlements for Fish Potter Bolaños clients include: *Crumpton v. Octapharma Plasma*, 19-cv-8402 (N.D. Ill) ($9.9 million); *Devose v. Ron's Temporary Help Services, Inc.*, 2019L1022 (Cir. Ct. Will Cty) ($5.375 million); *Labarre v. Ceridian HCM, Inc.*, 2019 CH 06489 (Cir. Ct. Cook Cty) ($3.49 million); *Johnson v. Resthaven/Providence Life Servs.*, 2019-CH-1813 (Cir. Ct. Cook Cnty.) ($3 million); *Marsh v. CSL Plasma, Inc.* 19-cv-07606 ($9.9 million); *Philips v. Biolife* Plasma, 2020 CH 5758, (Cir. Ct. Cook Cnty.) ($5.98 million); *Davis v. Heartland Emp. Servs.*, No. 19-cv-00680, dkt. 130 (N.D. Ill.) ($5.4 million); *Figueroa v. Kronos Incorporated*, 2019-CV-01306 ($15.2 million); *Martinez v. Nando's Peri Peri*, 2019CV07012 (N.D. Ill. 2020)($1.78 million); *O'Sullivan, et. al. v. WAM Holdings, Inc*., 2019-CH-11575 (Cir. Ct. Cook Cnty.) ($5.85 million); *Barnes v. Aryzta LLC*, 2017CH11312(Cook Cty. Cir. Ct.)($2.9 million); *Burlinski v. Top Golf USA, No. 19*-cv-*06700*, dkt. 103 (N.D. Ill.) ($2.6 million); *Diller v. Ryder Integrated Logistics*, 2019-CH-3032 (Cir. Ct. Cook Cnty.) ($2.25 million); *Jones v. Rosebud*

*Rests., Inc.*, 2019 CH 10620 (Cir. Ct. Cook Cnty.) ($2.1 million).

Class Counsel also has experience in BIPA settlement with structure of two subclasses. *See Lawrence, et al. v. Atria Mgmt Co.*, 2020 CH 01384 (Cook Cty. Cir. Ct., IL) ($1,000 gross for the non-arbitration subclass and $456 gross for the arbitration subclass); *Durbin, et al b. Carrols, LLC*, 2021 L 41 (Macon Cty, IL) ($430 net per claimant without or without an arbitration agreement).

### 2. Certification Will Be Appropriate Under Rule 23(b).

Class certification is appropriate under Rule 23(b)(3) if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). These prerequisites are satisfied.

### a. Common Questions Predominate.

Rule 23(b)'s predominance requirement looks to whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem Prods. v. Windsor,* 521 U.S. 591, 623 (1997). "Thus, the Plaintiff bears the burden of demonstrating 'that the elements of liability are capable of proof at trial through evidence that is common to the class rather than individual to the members.'" *Kernats, et al. v. Comcast Corp.,* Case Nos. 09 C 3368 and 09 C 4305, 2010 WL 4193219, at *7 (N.D. Ill. Oct. 20, 2010). Satisfaction of this criterion normally turns on the answer to one basic question: is there an essential common factual link between all class members and the Defendants for which the law provides a remedy? The common question predominating in this case is whether Defendants collected, possessed, stored, and/or used Settlement Class Members' biometric data without following the requirements of BIPA. The answer to this question determines Defendants' liability under BIPA for all potential persons in the Settlement Class and therefore predominates over any individual questions.

b. **A Class Action is a Superior Mechanism.**

The superiority inquiry requires a court to compare alternatives to class treatment and determine if any alternative is superior. "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982). This is particularly true in actions like this one, where numerous individual claimants each suffer a relatively small harm. "Rule 23(b)(3) was designed for situations . . . in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006). Here, the alternative to class resolution is a myriad of individual lawsuits for recoveries possibly less than $1,000, plus attorneys' fees and costs.

c. **Plaintiffs' Notice Program and Class Notice Merit Approval.**

The proposed Notice complies with due process and the Federal Rule of Civil Procedure 23. Pursuant to Rule 23(c)(2)(B), notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).Fed. R. Civ. P. 23(c)(2)(B).

Distribution of Notices directly to Class Members by U.S. mail and email/text where available is reasonable.

## III.    Conclusion

The Settlement is fair and provides significant monetary relief to the Settlement Class. The Court should grant preliminary approval and enter the proposed Preliminary Approval Order, attached as <u>Exhibit 2</u>, which will be submitted to the Court via its proposed order email address.

Respectfully submitted,

Dated: December 12, 2023                         <u>/s/ Mara Baltabols</u>
                                                             One of Plaintiffs' Attorneys

David Fish (dfish@fishlawfirm.com)
Mara Baltabols (mara@fishlawfirm.com)
Fish Potter Bolaños PC
111 East Wacker Drive, Suite 2300
Chicago, Illinois 60601
Tel. (312) 861-1500
*Attorneys for Plaintiffs and Others Similarly Situated*

**CERTIFICATE OF SERVICE**

      The undersigned attorney hereby certifies that a true and correct copy of the foregoing was filed with the Court's CM/ECF filing system on December 12, 2023, which will serve a copy on all counsel of record.

<u>/s/ Mara Baltabols</u>
One of Plaintiffs' Attorneys
