IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **KRYSTYNA HARE** and **MAURICE STEVENS** individually and on behalf of all others similarly situated, | |
| Plaintiffs, | |
| v. | No. 21-cv-01062 |
| **AMERICAN EAGLE OUTFITTERS, INC.** and **AE RETAIL WEST, LLC** and **AE CORPORATE SERVICES CO.**, | Honorable Charles P. Kocoras<br><br>Magistrate Judge Maria Valdez |
| Defendants. | |

## PLAINTIFFS' COMBINED MOTION AND MEMORANDUM OF LAW IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs Krystyna Hare and Maurice Stevens ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their undersigned counsel hereby move for judgment and final approval of the class action Settlement and Release Agreement ("Settlement Agreement"), attached to this motion as <u>Exhibit 1</u>, reached with Defendants American Eagle Outfitters, Inc., AE Retail West, LLC, and AE Corporate Services Co. (collectively, "Defendants") (Plaintiff and the collective Defendants are each referred to as a "Party" and together Plaintiff and Defendants are referred to as the "Parties") through arms-length negotiations. As detailed below, the Notice process was robust with no requests for exclusion and no objections received, which represents overall approval by the Class. Class Members will receive a substantial direct cash benefit. This Settlement is pursuant to the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA" or "the Act").

I. **INTRODUCTION**

As more fully described herein and in Plaintiffs' Fee Motion (Dkt. No. 65), the Parties have reached a $700,000 class settlement for the 1,499 Settlement Class Members. This Settlement consists of two Subclasses. The Maximum Gross Settlement Amount equals the combined total of $1,100 per person for the 465 class members who did not execute a Biometric Acknowledgement ("Subclass A") or $511,500, and $191.57 per person for the 984 class members who did execute a Biometric Acknowledgement ("Subclass B") or $188,500.00. This is a strong result for the Class as a whole and the Settlement is structured to maximize the number of Settlement Class Members who will receive a Settlement payment: each Settlement Class Member will automatically be sent a payment unless they opt out. There is no requirement that they submit a claim form to receive a pro rata cash payment. Any residual funds will be distributed 50% to Defendants and 50% to Prairie State Legal Services as a *cy pres* recipient.

Following this Court's preliminary approval of the Parties' Settlement, the administration proceeded on schedule. In accordance with the Court-approved plan described in the Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Motion for Preliminary Approval"), and as ordered by this Court, direct individual notice of the Settlement was mailed (and emailed where email addresses were available) to putative Settlement Class Members. *See* Exhibit 2, Barazesh Decl. at ¶¶ 8, 9. As detailed in the Motion for Preliminary Approval (Dkt. No. 60), all Class Members who did not exclude themselves from the Settlement will receive a payment. At the conclusion of the deadline, there were zero requests for exclusion, and zero objections. Ex. 2 at ¶¶ 13, 14.

Plaintiffs respectfully submit that the complete absence of objections and exclusions speaks to the fairness, reasonableness, and adequacy of the Settlement, the effectiveness of the Notice, as

well as the ease of the administration plan. The overwhelmingly positive reaction from Class Members also underscores the value the Class Members place on the terms of the Settlement agreed to by the Parties. This is a fair and reasonable result, particularly in view of the significant known and unknown risks and anticipated delays involved in litigating the merits of BIPA claims and inherent in pursuing these claims individually for a large percentage of Class Members.

For the reasons set forth below, both the form and substance of this Settlement satisfy the standards for final approval, and it should therefore be approved.

## II. PROCEDURAL HISTORY

On January 13, 2021, Plaintiffs' Class Action Complaint was filed in the Circuit Court of Cook County, alleging that Defendants violated BIPA by requiring employees to use a biometric timekeeping system as part of their jobs. Dkt. No.1-1. On February 24, 2021, Defendants removed the Litigation from state court to the United States District Court for the Northern District of Illinois. Dkt. No. 1.

On September 22, 2022, Plaintiff Stevens was dismissed by agreement. Dkt. No. 40. Thereafter, Plaintiff Stevens filed an arbitration with the AAA, which the Parties eventually agreed to hold in abeyance while they discussed settlement.

On August 10, 2023, the Parties informed the Court that they reached a class-wide settlement. Dkt. No. 51. On November 28, 2023, the Court extended the deadline to file the Motion for Preliminary Approval to December 12, 2023, for Defendants to finalize the class list. Dkt. No. 55. On December 11, 2023, a Motion to Amend the Complaint was filed to re-add Plaintiff Stevens as a Class Representative. The Motion was granted, and on December 11, 2023, Plaintiffs filed an Amended Complaint. The Settlement is comprised of two subclasses, those who did and did not execute a Biometric Acknowledgement. Ex. 1, ¶¶ 1.38 & 1.39.

On January 4, 2024, the Court entered a Preliminary Approval Order for the Settlement. (Dkt No. 63.) The *Manual for Complex Litigation* (Fourth) (2004) § 21.63 describes a three-step procedure for approval of class action settlements:

1. Preliminary approval of the proposed settlement at an informal hearing;

2. Dissemination of mailed and/or published notice of the settlement to affected class members; and

3. A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

This procedure safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.25 (4th ed. 2002). The first two steps in this process have occurred. With this Motion, Plaintiffs respectfully request that the Court take the third and final step in the process by granting final approval of the Settlement.

### III. SUMMARY OF PROPOSED SETTLEMENT TERMS

#### A. The Settlement Class (Ex. 1, Settlement Agreement, ¶¶ 1.38, 1.39, 2.3)

The proposed Settlement Class includes a maximum total of 1,449 identified individuals who worked for Defendants during the class period and who used handscan and/or fingerscan timeclocks in conjunction with their employment. Of the 1,449 Settlement Class Members, 465 Class Members are in Subclass A and did not execute a Biometric Acknowledgment, and 984 Class Members are in Subclass B and did execute a Biometric Acknowledgement.

Pursuant to the Settlement, Defendants further agree to waive the arbitration agreements and include those with arbitration agreements in the Settlement Class. 982 of the 984 individuals with Biometric Acknowledgments (Subclass B) appear to also have arbitration agreements.

The Class Representatives seek final approval of a Settlement Class of these subclasses:

4

**Subclass A:** means All individuals who worked for Defendants in the State of Illinois and who enrolled in or used a fingertip scan point of sale system in connection with their work for Defendants from January 13, 2016 to January 13, 2021 and did not execute a Biometric Acknowledgment.

**Subclass B:** means All individuals who worked for Defendants in the State of Illinois and who enrolled in or used a fingertip scan point of sale system in connection with their work for Defendants from January 13, 2016 to January 13, 2021 and executed a Biometric Acknowledgment.

### B. Administration and Notice

As described in the Motion for Preliminary Approval (Dkt. No. 60), the administration and notice procedure were designed to provide putative Class Members with direct written notice of the Settlement. Consistent with draft notices submitted to the Court at the time of preliminary approval, the detailed Notice outlined the Settlement terms and provided information clearly informing Class Members of their options and how to opt out, object, or obtain additional information from the Administrator and/or directly from Class Counsel. *See* Exhibit 2. The Notice identified the amounts that could be paid out of the Maximum Gross Settlement Fund (Service Award, attorneys' fees, litigation costs, Administration Expenses) and estimated net check amount.

In compliance with the Settlement Agreement and consistent with the Order Granting Preliminary Approval ("Preliminary Approval Order"), Defendants timely provided the Settlement Administrator with a list of all the individuals identified as Class Members ("Class List") along with all known contact information. Exhibit 2 at ¶ 4. The Administrator cross-referenced the names and addresses with the U.S. Postal Service's ("USPS") National Change of Address Database and, through this method, updated any outdated addresses. *Id*. ¶ 6.

On May 8, 2023, the Administrator mailed (and emailed, where available) the Class Notice. *Id*. ¶¶ 8, 9. After the initial mailing, USPS returned 217 Notices. *Id*. ¶ 11. Through additional searches, the Administrator was able to locate 93 updated addresses and ultimately only 124

5

remained undeliverable. *Id*. ¶ 11. After the conclusion of the deadline, the Administrator received no requests for exclusion and no objections to the Settlement. *Id*. ¶¶ 13, 14. In total, 1,479 individuals, who constitute 98.6% of the potential Class Members, were successfully sent notice via mail and/or email. *Id*. ¶ 12. The overwhelming majority of Class Members were sent notice via both mail and email. *Id.* ¶¶ 9 & 11.

### C. Class Release

Class Members who do not exclude themselves will release the Releasees, as defined in the Settlement Agreement, from all claims relating to Plaintiffs' or the Class Members' biometric information while employed at Defendants, including by way of example, any claims arising out of or relating to Defendants' storage, collection, capture, possession, use, transfer, disclosure, or other handling of biometric identifiers or biometric information. Ex. 1, ¶ 3.1.

### D. Monetary Relief for Participating Class Members

While denying all liability and wrongdoing, Defendants have agreed to pay a Maximum Gross Settlement Amount of $700,000 to resolve the claims in this case on a class action basis. The Maximum Gross Settlement Amount equals the combined total of $1,100 per person for the 465 class members who did not execute a Biometric Acknowledgement ("Subclass A") or $511,500, and $191.57 per person for the 984 class members who did execute a Biometric Acknowledgement ("Subclass B") or $188,500.00. Ex. 1, ¶ 1.18. The Maximum Gross Settlement Amount shall represent the total extent of Defendants' monetary obligations. *Id.* The Maximum Gross Settlement Amount includes all potential monies to be paid by Defendants in connection with the settlement, including, without limitation, the Service Awards, attorneys' fees, costs and expenses, interest, statutory and liquidated damages, penalties, and all costs of administration and notice. The Net Settlement shall be the Maximum Gross Settlement Amount less class attorneys'

fees and litigation costs, Service Awards, settlement administration costs, including notice costs, and any other costs associated with the settlement.

As no requests for exclusion were received, all Class Members will automatically be sent a settlement check to their address on file. Because Class Members are not required to submit a claim to receive payment, the process is streamlined to ensure that all Class Members are able to participate. *Id.* ¶ 2.3.

Under the terms of the Settlement, Settlement Class Members will have 150 days to cash their settlement payments. Replacement checks may be requested during the 150-day check cashing period. Any checks that are uncashed after 150 days from their date of issuance thereby become null and void. *Id.* ¶ 2.3(e). After 150 days any additional Settlement Class Members beyond the 1,449 currently identified, if any and up to an additional 30 Settlement Class Members, will be paid their pro rata share of the Net Settlement Amount for the appropriate subclass out of the total amount of unclaimed funds. Only after the additional identified class members are paid out of the total amount of unclaimed funds shall any remaining unclaimed funds be divided, with 50% to revert to Defendants and 50% to be distributed to cy pres beneficiary Prairie State Legal Services. *Id.*

### E. Class Representatives' Service Awards

As described in the Fee Motion (Dkt. No. 65), in exchange for their service on behalf of the Class Members, the Settlement Agreement provides for a Service Award of $7,500 each to be paid to Krystyna Hare and Maurice Stevens for their work in prosecuting this lawsuit on behalf of the Settlement Class, providing detailed information to support the allegations, and recovering money for the Settlement Class. Plaintiffs provided information as requested by their counsel before and throughout the litigation, were constantly available, and assisted Plaintiffs' counsel

whenever called upon. Plaintiffs took substantial direct and indirect risks by bringing the action in their names and agreeing to participate fully. The time, risk, and effort Plaintiffs put into the case should be recognized and encouraged through the Service Award.

Both Class Representatives were essential to this case, and fundamental to establishing a Class comprised of two separate subclasses. Plaintiff Stevens signed a Biometric Acknowledgement and arbitration agreement. He was originally dismissed to file an arbitration then re-added once the Parties reached the Settlement. Defendants agreed to waive the right to arbitrate, and the settlement value considered the potential consent to collection of biometric data. This resolution was reached after Plaintiffs Stevens' claims proceeded in arbitration for a period of time. Further, Plaintiff Hare was essential to the non-arbitration class and to maintaining the federal court case. She also participated in discovery and sat for a deposition. *See* Exhibit 3, Baltabols Decl., ¶ 10.

### F. Attorneys' Fees and Costs

Consistent with the Fee Motion, Class Counsel requests one-third of the Settlement Fund. As a result, the amount requested for final approval is $233,333.33 as attorneys' fees and $1,015.30 for reimbursement of out-of-pocket litigation expenses. *See* Exhibit 3, Baltabols Dec. As more fully explained in the Fee Motion, courts in this District have regularly awarded 1/3 or more of the gross fund as attorneys' fees in common fund class action settlements. *See* Exhibit 4, Chart with Comparables. Class Counsel also requests $12,873.00 in Settlement Administration costs. Exhibit 2, ¶ 15.

### IV. FINAL APPROVAL IS WARRANTED

Federal courts strongly favor and encourage settlements, particularly where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit

8

the class could hope to obtain. *See Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910). Federal Rule of Civil Procedure 23(e) governs court approval of class action settlements and mandates that the "claims, issues, or defenses of a certified class...may be settled...only with the court's approval...after a hearing and only on finding that it is fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e); *AIG v. ACE INA Holdings*, No. 07 CV 2898, 2012 WL 651727, at *1 (N.D. Ill. Feb. 28 2012); *Uhl v. Thoroughbred Tech. & Tel., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002). Rule 23(e)(2) sets out that a court must consider whether (1) the class representative and class counsel have adequately represented the class; (2) the settlement was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2) (eff. Dec. 1, 2018); *see, e.g., Snyder v. Ocwen Loan Servicing*, No. 14 CV 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019).

In deciding whether a settlement is fair, reasonable, and adequate, courts consider the following factors: (1) the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement; (2) the Defendant's ability to pay; (3) the complexity, length and expense of further litigation; (4) the amount of opposition to the settlement; (5) the presence of collusion in reaching a settlement; (6) the reaction of members of the class to the settlement; (7) the opinion of competent counsel; and (8) the stage of proceedings and the amount of discovery completed. *Wong v. Accretive Health*, 773 F.3d 859, 863 (7th Cir. 2014) (the "*Wong* factors"); *accord Synfuel v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). Courts in the Seventh Circuit continue to analyze these factors in tandem with Rule 23(e)(2) factors to ensure that a settlement is fair, reasonable, and adequate. *See, e.g., In re NCAA Student-Athlete Concussion Injury Litig.*, 332 F.R.D. 202, 217 (N.D. Ill. 2019). Applying these factors, the Court should find that the Settlement is fair, reasonable, adequate, and should be approved.

**A. Rule 23(e)(2) Factors Favor Final Approval.**

    a. <u>The Class Representatives and Class Counsel Have Adequately Represented the Class</u>

To establish that class counsel and the class representatives have adequately represented the class, courts consider their performance as it relates to the "conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment. This factor is satisfied where the class representatives diligently participated and class counsel vigorously litigated. *Snyder*, 2018 WL 4659274, at *4; *see also Chambers v. Together Credit Union*, No. 19-CV-00842-SPM, 2021 WL 1948453, at *2 (S.D. Ill. May 14, 2021) (finding this factor satisfied when class counsel vigorously litigated the case "both through motion practice on the legal merits and through discovery of facts and potential damages"). Key to this factor is whether class counsel and the class representatives had sufficient information to negotiate a class-wide settlement. *See Snyder*, 2018 WL 4659274 at *4. This element corresponds with the Seventh Circuit's direction to consider the "stage of the proceedings and the amount of discovery completed." *Wong*, 773 F.3d at 863 (internal quotations omitted).

Plaintiffs cooperated throughout the entirety of this matter, including fielding questions, and regularly conferring with counsel, and waging the risk of being Class Representatives. Further, the Parties engaged in litigation that allowed them to comprehensively review and weigh the risks and probabilities of success and calculate a range of potential damages prior to engaging in settlement discussions. Accordingly, the Class Representatives and Class Counsel have adequately represented the proposed Settlement Class and Rule 23(e)(2)(A) is satisfied.

    b. <u>The Settlement was Reached Through Arm's-Length, Non-collusive Negotiations.</u>

The settlement terms were negotiated at arms-length between attorneys experienced in the litigation, and settlement of class actions. Counsel for both Parties understand the unique and

10

unsettled legal and factual issues involved in the case. BIPA litigation is an expanding and rapidly evolving area of law, and there existed multiple questions of law that remained unsettled by the courts. The Settlement was reached only after a substantial amount of litigation, after the Parties' counsel assessed the strengths and weaknesses of the case throughout the course of discovery and culminated in settlement following lengthy settlement discussions. Through their experience, the attorneys were well positioned to evaluate the strengths and weaknesses of their clients' positions, as well as the appropriate basis upon which to settle the case. Accordingly, the Settlement was properly obtained through arm's-length negotiations and was non-collusive.

   c. <u>The Settlement Secures Positive Relief for Class Members</u>

The Settlement provides more than adequate relief for Class Members. After all deductions are made, Settlement Class Members who did not execute a Biometric Acknowledgement are estimated to receive a check in the net amount of $675.00. Class Members who did execute a Biometric Acknowledgement are estimated to receive a check in the net amount of $110.00. This is an excellent per-person recovery that leaves little doubt that the benefit to the Class is quite positive. The per-person recovery substantially exceeds the amounts awarded to individuals in many previously approved BIPA class settlements. *Compare with Baldwin v. Metrostaff*, No. 2019-CH-04285 (Il. Cir. Ct. Cook Cnty. May 3, 2022) (Wilson, J.) (approving BIPA settlement of $292.98 net per person for 2,251 class members); *Zhirovetskiy v. Zayo Grp., LLC*, No. 2017-CH-09323 (Il. Cir. Ct. Cook Cnty. Apr. 8, 2019) (Flynn, J.) (approving reversionary fund for 2,200 class members, which capped payments at $400 <u>gross</u> per member); *Zepeda v. Kimpton Hotel & Rest.*, No. 2018-CH-02140 (Il. Cir. Ct. Cook Cnty. Dec. 5, 2018) (Atkins, J.) ($500 gross); *Taylor v. Sunrise Senior Living Mgmt., Inc.*, No. 2017-CH-15152 (Il. Cir. Ct. Cook Cnty. Feb. 14, 2019) ($115 or $40) (Loftus, J.); *Sharrieff v. Raymond Mgmt. Co.*, 2018-CH-01496 (Il. Cir. Ct. Cook Cnty. Aug. 1, 2019) (Cohen, J.) ($500 gross).

The Settlement also represents a substantial benefit for both Class Members that did not execute a Biometric Acknowledgement (allocated a gross amount of $1,100 per person) and those who did (allocated a gross amount of $191.57 per person). *See Lawrence, et al. v. Atria Mgmt Co.*, 2020 CH 01384 (Cook Cty. Cir. Ct., IL) ($1,000 gross for the non-arbitration subclass and $456 gross for the arbitration subclass); *Durbin, et al b. Carrols, LLC*, 2021 L 41 (Macon Cty, IL) ($430 net per claimant without or without an arbitration agreement).

Critically, the fact that the Settlement provides a portion of funds from uncashed checks to *cy pres* is notable. *See, e.g., Rosenbach v. Six Flags Ent. Corp.*, No. 2016-CH-00013 (Il. Cir. Ct. Lake Cnty. Oct. 29, 2021) (approving reversionary fund, which capped class member payments at $200 or $60 depending on date of finger scan and reverted unclaimed funds to defendant). Here, 50% of funds from uncashed checks will be distributed to *cy pres* recipient Prairie State Legal Services subject to approval by the Court. Ex. 1, ¶ 2.3(e). Yet, Plaintiffs anticipate a high check cashing rate because of the substantial mail notice rate—indicating good addresses for checks to reach Class Members.

**B. The Proposed Settlement is Fair, Reasonable, and Adequate.**

    a. <u>Further Litigation Would be Highly Complex, Protracted, and Expensive to Address the Merits of Plaintiffs' Claims and Class Certification</u>

If the litigation had continued, it would have been complex, expensive, and protracted. Appeals that were pending at the time of negotiations were also considered. A few relative – and potentially dispositive – issues in BIPA jurisprudence were unsettled at the outset of this litigation but have now been decided by the Illinois Supreme Court. Had the Illinois Supreme Court decided that a one-year limitations period applies to BIPA claims the vast majority of Class Members would suddenly be rendered ineligible to obtain any relief because their claims would become time-barred. *See Tims v. Black Horse Carriers, Inc.,* 2023 IL 127801. Similarly, if the Illinois

Supreme Court held that BIPA claims only accrue upon the first scan, many Class Members' claims would have become time barred. *Cothron v. White Castle Sys., Inc.,* 2023 IL 128004.

The Illinois Supreme Court recognized the potential financial impact of BIPA may impact discretionary damages and recently asked for the legislature to weigh in. *Cothron*, 2023 IL 128004, ¶ 43 (Feb. 17, 2023). *Cothron* was also subject to a petition for rehearing, that was denied by the Illinois Supreme Court on July 18, 2023. In that opinion, the *Cothron* Court again asked the legislature for guidance and to "make clear its intent regarding the assessment of damages under the Act." *Id.* (rehearing denied July 18, 2023). New legislation was recently proposed to limit damages, modifying damages from $1,000 per violation to $1,000 per person. *See* https://www.ilga.gov/legislation/BillStatus.asp?DocNum=2252&GAID=17&DocTypeID=HB&LegId=146677&SessionID=112&GA=103; *see also* Illinois Senate committee passes bill changing liability laws for biometric data violations (wgem.com) (last visited March 25, 2024).

  b. <u>Administration and Notice Procedures were Robust, and the Settlement has been Well Received by the Class Members.</u>

As described herein, class administration and notification procedures were robust and employed the best mechanisms to thoroughly identify and notify Class Members at the earliest possible juncture, providing them with as much time as possible under the circumstances to opt out or object to the settlement. The Settlement Administrator then performed multiple searches to update addresses. Of the 1,499 Class Members, 1,479 Settlement Class Members (98.6%) received Notice. None of the Class Members opted out or objected to the settlement. *See McDaniel v. Qwest Commc'ns Corp.*, No. CV 05 C 1008, 2011 WL 13257336, at *4 (N.D. Ill. Aug. 29, 2011) (granting final approval of class settlement with no objections and noting that "[a]n absence of objection is a 'rare phenomenon[]' and 'indicates the appropriateness of the request[]'").

13

The lack of objectors denotes support for the settlement and strongly favors a finding that it is "fair and reasonable." *Am. Civil Liberties Union v. United States Gen. Servs. Admin.*, 235 F. Supp. 2d 816, 819 (N.D. Ill. 2002); *In re Southwest Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 6406084 (N.D. Ill. Dec. 6, 2013) (finding that the "low level of opposition" amounting to 0.01% of the class "supports the reasonableness of the settlement"); *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at *3 (N.D. Ill. Dec. 10, 2001) ( "[t]he absence of objection to a proposed class settlement is evidence that the settlement is fair, reasonable and adequate"). The fact that none of Class Members have opted-out nor filed objections to the proposed Settlement is "strong circumstantial evidence favoring settlement." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020-21 (N.D. Ill. 2000).

Since the Class Members did not have to submit claims to participate, based upon the substantial Notice rate, the vast majority Class Members are expected to receive direct cash payments. Claims-made class settlements typically result in less than 15% of all eligible members receiving payment. *See McLaughlin on Class Actions § 6:24* (8th ed.) ("claims-made settlements typically have a participation rate in the 10–15 percent range."); *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 Fla. L. Rev. 71, 119-20 (2007) (noting that it is not unusual to have participation rates of 10 to 15% and examining examples of rates lower than 5%); *Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns*, FED. TRADE COMM'N, 11 (Sept. 2019) ("the median calculated claims rate was 9%, and the weighted mean (i.e., cases weighted by the number of notice recipients) was 4%."). This is a Notice rate with far greater success than typically achieved in class settlements and warrants final approval.

      c.   The Opinion of Competent Counsel Weighs in Favor of Approval

Here, Class Counsel affirms that this settlement provides a fair value and a significant benefit to the members of the Class, which meets or exceeds the typical BIPA class settlement. Class Counsel strongly endorses this Settlement. These facts weigh heavily in favor of final approval. *See McKinnie v. JP Morgan Chase Bank, N.A.,* 678 F. Supp. 2d. 806, 812 (E.D. Wis. 2009) (factors including that "counsel endorses the settlement and it was achieved after arms-length negotiations. . . suggest that the settlement is fair and merits final approval").

## V.   CONCLUSION

Plaintiffs respectfully request that the Court enter an Order granting final approval of the Settlement. A copy of the proposed final order is attached as Exhibit 5.

Respectfully submitted,

Dated: March 28, 2024                      /s/ Mara Baltabols
                                                   One of Plaintiffs' Attorneys

Fish Potter Bolaños PC
111 East Wacker Drive, Suite 2300
Chicago, Illinois 60601
Tel. (312) 861-1800
docketing@fishlawfirm.com
*Attorneys for Plaintiffs and Others Similarly Situated*

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that a true and correct copy of the foregoing was filed with the Court's CM/ECF filing system on March 28, 2024, which will serve a copy on all counsel of record.

/s/ Mara Baltabols